# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

TranCentral, Inc.,

                      Plaintiff,

                                      Civ. No. 07-31 (RHK/JSM)
                                      **MEMORANDUM OPINION AND ORDER**

v.

Alliance Asphalt, Inc., *et al.*,

                      Defendants.

---

William H. Henney, Minnetonka, Minnesota, for Plaintiff.

Mark J. Ayotte, Briggs and Morgan, P.A., Minneapolis, Minnesota, Craig J. Helmreich, Scopelitis, Garvin, Light & Hanson, Indianapolis, Indiana, for Defendant Millard Refrigerated Services, Inc.

---

      In this breach-of-contract case, Plaintiff TranCentral, Inc. ("TranCentral"), a Minnesota corporation with its principal place of business in Minneapolis, has sued among others Millard Refrigerated Services, Inc. ("Millard"), a Georgia corporation with its principal place of business in Nebraska. Millard now moves to dismiss TranCentral's Complaint for lack of personal jurisdiction. For the reasons set forth below, the Court will deny Millard's Motion.

## BACKGROUND

      The facts of this case are relatively straightforward. TranCentral is a Minnesota corporation "engaged in factoring, which is the purchase and collection of receivables."

(Compl. ¶ 1; Mem. in Opp'n at 1.) On January 12, 2005, TranCentral entered into a factoring agreement (the "Factoring Agreement") with Alliance Asphalt, Inc. ("Alliance"). (Compl. ¶ 7.) Pursuant to the Factoring Agreement, Alliance sold certain accounts receivable and invoices to TranCentral. (Id. ¶ 12; Mem. in Opp'n at 1.) Among the items sold to TranCentral were invoices payable to Alliance by Millard. (Compl. ¶ 12.)

Millard is a Georgia corporation with its principal place of business in Omaha, Nebraska. (Id. ¶ 6; Offner Decl. ¶ 3.) Millard is a refrigerated warehousing and logistics company operating several warehouse facilities across the United States. (Id.) In that capacity, Millard arranges for interstate motor carriers (such as Alliance) to transport its customers' freight from its warehouses to the customers' requested destinations. (Id. ¶ 4.) Millard "does not maintain a place of business in Minnesota" and "owns no property, operates no facilities, maintains no offices, and does not regularly conduct business" here. (Id. ¶ 8.)

According to TranCentral, Millard has failed to pay $145,370.84 due under invoices it purchased from Alliance. (Compl. ¶ 13.) Those invoices concern goods hauled by Alliance from Millard's Fort Worth, Texas warehouse to a client located outside of Minnesota. (Offner Decl. ¶ 7.) As a result of Millard's failure to pay the invoices, TranCentral commenced this action against Alliance, Millard, and three individuals[1] who

---

[1] Susan Buckley Watson, Cory Rose, and Kristina Lane Johnson.

signed agreements guaranteeing all payments due to TranCentral under the Factoring Agreement.  (Id. ¶¶ 3-5.)

Millard now moves to dismiss TranCentral's Complaint, asserting that the Court lacks personal jurisdiction over it.[2]  As set forth in more detail below, the Court does not agree.

### STANDARD OF REVIEW

To survive Millard's Motion, TranCentral need only make a *prima-facie* showing that personal jurisdiction over Millard exists in Minnesota.  E.g., Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)).  In determining whether TranCentral has made such a showing, the Court must view the evidence in the light most favorable to TranCentral.  Id.[3]

Jurisdiction over Millard, a non-resident of Minnesota, must satisfy both the Due Process Clause of the Fourteenth Amendment and the requirements of Minnesota's long-arm statute.  Pecoraro, 340 F.3d at 561.  However, because Minnesota's long-arm statute extends jurisdiction to the farthest reaches of the Due Process Clause, Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991), the Court's inquiry

---

[2] Millard filed a Motion to Dismiss (Doc. No. 3) on January 10, 2007, and then filed an Amended Motion to Dismiss (Doc. No. 6) on February 1, 2007.

[3] When deciding whether personal jurisdiction exists, the Court must view the evidence in the light most favorable to the plaintiff only where, as here, it has not held an evidentiary hearing and has instead relied on the pleadings and affidavits.  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

"collapses into the single question of whether [the] exercise of personal jurisdiction comports with due process." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

In the personal-jurisdiction context, due process is satisfied only where a non-resident defendant has sufficient "minimum contacts" with the forum state "such that summoning the defendant would not offend traditional notions of fair play and substantial justice." Pecoraro, 340 F.3d at 561 (internal citations and quotations omitted). "The central question is whether [the] defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." Id. at 562 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985), and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). To answer that "central question," the Court must examine five factors: (1) the nature and quality of the defendant's contacts with the forum state, (2) the quantity of those contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. Pecoraro, 340 F.3d at 561(citation omitted). The first three factors are of primary importance, while the last two are of secondary importance. Id.

These factors, however, do not provide a "slide rule by which fundamental fairness can be ascertained with mathematical precision." Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983) (internal quotation marks and citation omitted). Indeed, when tackling the thorny issue of personal jurisdiction, a "black and

white" answer rarely exists; "[t]he greys are dominant and even among them the shades are innumerable." Kulko v. Cal. Super. Ct., 436 U.S. 84, 92 (1978) (internal quotation marks and citation omitted). Accordingly, the Court must be mindful that "the central concern of the inquiry . . . is the relationship among the defendant, the forum, and the litigation." Land-O-Nod, 708 F.2d at 1340.

## ANALYSIS

TranCentral asserts that Millard's contacts with Minnesota have been sufficiently "continuous and systematic" that the Court may exercise general personal jurisdiction over it.[4] (Mem. in Opp'n at 5-6.) In particular, TranCentral points to the fact that (1) Millard brokered 882 loads to Minnesota in 2005 and 2006 and (2) Millard maintains an Internet website accessible in Minnesota, which permits direct contact between Millard and its existing and potential customers. (Id. at 5.)[5] In response, Millard argues that its contacts

---

[4] There are two distinct types of personal jurisdiction: specific and general. General personal jurisdiction – the broader of the two types – refers to the forum state's power to adjudicate *any* cause of action against a defendant, regardless of where the cause of action arose. E.g., Lakin v. Prudential Sec., Inc., 348 F.3d 704, 707 (8th Cir. 2002) (citation omitted). The exercise of such jurisdiction is appropriate only if the defendant's contacts with the forum state are "continuous and systematic." Morris v. Barkbuster, Inc., 923 F.2d 1277, 1281 (8th Cir. 1991) (citation omitted). The narrower of the two types, specific personal jurisdiction, refers to jurisdiction over causes of action specifically tied to the defendant's forum contacts – that is, claims that "arise out of or relate to a defendant's activities within a state." Lakin, 348 F.3d at 707 (internal quotation marks and citation omitted). In its Memorandum in Opposition, TranCentral nowhere argues that its claim against Millard arises out of Millard's Minnesota contacts; accordingly, the Court need only consider whether general personal jurisdiction over Millard exists.

[5] TranCentral also notes that "Millard is licensed as a broker under the Federal Motor Carrier Safety Administration" and that Millard is a large corporation with operations spanning the country. (Mem. in Opp'n at 2-3, 5.) The Court declines to consider these facts, however, because they in no way establish contacts by Millard *with Minnesota.*

with Minnesota are too "sporadic and attenuated" to support the exercise of general personal jurisdiction. (Reply Mem. at 3.) It asserts that its "mere 882 shipments" to Minnesota – which amounted to only 1.57% of its shipments during 2005-06 – simply are not enough to establish general personal jurisdiction. (Def. Mem. at 7-8; Reply Mem. at 4-5.) It further argues that TranCentral has not shown that Millard's website has the requisite level of "interactivity" sufficient to establish personal jurisdiction in Minnesota. (Reply Mem. at 5-7.)

      The Court need not reach the parties' arguments concerning Millard's website, however, because it concludes that by brokering the shipment of its customers' freight to Minnesota 882 times over the past two years, Millard has subjected itself to general personal jurisdiction in this state. Indeed, Millard has engaged in such business activities with the full knowledge that its customers' freight would be delivered in Minnesota. The quality and nature of its contacts with Minnesota, therefore, cannot be considered "random," "fortuitous," or "attenuated." Pecoraro, 340 F.3d at 561. Moreover, the substantial quantity of Millard's contacts with Minnesota – contracting to ship (on average) more than one load to Minnesota *every day for two years* – is precisely the type of "continuous and systematic" activity that justifies the exercise of personal jurisdiction over a non-resident defendant. Simply put, given its substantial level of Minnesota activity, Millard should have reasonably anticipated being haled into court here. See Brandi v. Belger Cartage Serv., Inc., 842 F. Supp. 1337, 1342 (D. Kan. 1994) ("When a business is engaged in brokering transportation services '[t]he expectation is far from unreasonable

that such activity could lead to litigation in a distant forum . . . .'") (quoting Miss. Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003, 1010 (5th Cir. 1982)).[6]

In an attempt to avoid this result, Millard argues that its repeated shipments to Minnesota cannot suffice to establish general personal jurisdiction because those shipments constituted only a small percentage of Millard's overall business. (Def. Mem. at 8-9.) The flaw in this argument, however, is that Millard views the quality and quantity of its contacts with Minnesota from *its* perspective, rather than from *Minnesota's* perspective. Indeed, it is irrelevant whether a corporation's contacts with Minnesota represent only a small percentage of its business, as long as those contacts are "continuous and systematic." As the Eighth Circuit recently stated:

> Many companies conduct millions of dollars in sales worldwide yet only do a small percentage of their sales in any one state. However, our relevant inquiry is not whether the percentage of a company's contacts is substantial *for the company*; rather, our inquiry focuses on whether the company's contacts are substantial for the *forum*.

Lakin, 348 F.3d at 709 (first emphasis added) (citations omitted). Here, there can be little doubt that Millard's contacts with Minnesota are substantial. See id. (reversing district

---

[6] Not only do the "primary" factors discussed in Pecoraro – including the nature, quality, and quantity of Millard's contacts with Minnesota – militate in favor of exercising personal jurisdiction here, but so, too, do the "secondary" factors: the interest of the forum state in providing a forum for its residents, and the convenience of the parties. As to the former, Minnesota clearly has an interest in providing a forum for TranCentral, a Minnesota corporation, for its claims against Millard. As to the latter, the Court notes that the individual Defendants and Alliance have contractually agreed to submit to jurisdiction in Minnesota. (See Compl. Exs. 1-4; Robbins Decl. ¶ 3.) Hence, it would be convenient for all parties (except perhaps Millard) to try TranCentral's claim against Millard together with its claims against the remaining Defendants.

court's determination that general jurisdiction did not exist over non-resident defendant where defendant's in-state business accounted for only 1% of its total business, because that business nevertheless amounted to contacts with "hundreds, if not thousands" of in-state residents).

Millard also argues that its contacts with Minnesota are "second hand at best," because it only *contracts* for the delivery of its customers' freight and does not actually transport or deliver the freight itself. (Reply Mem. at 4-5.) This is a distinction without a difference, however, because a defendant need not be physically present in a state to be subject to personal jurisdiction there. See, e.g., Burger King, 471 U.S. at 476 ("we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction"). The fact that Millard has not entered this state to deliver its customers' freight in no way diminishes the fact that it has "purposefully directed" its business activities here. See id. (personal jurisdiction exists despite lack of physical contacts with forum state "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of [that] State").[7]

---

[7] Millard also points to Central Freight Lines, Inc. v. APA Transport Corp., 322 F.3d 376 (5th Cir. 2003). There, the Fifth Circuit held that the defendant freight-delivery company, which was headquartered in New Jersey, was not subject to personal jurisdiction in Texas despite the fact that it "routinely arrange[d] and receive[d] . . . shipments to and from Texas and apparently sen[t] sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts." Id. at 381. These contacts were insufficient, according to the Fifth Circuit, because the defendant had "never actually operated any trucks or picked up or delivered any freight in Texas." Id. Millard argues that the Court should follow Central Freight Lines here, but the Court declines Millard's invitation, for two reasons. First, notwithstanding the holding in that case, the law is clear that a defendant need not be physically present in the forum state in order to be subject to personal

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that Defendant Millard Refrigerated Services, Inc.'s Amended Motion to Dismiss (Doc. No. 6) is **DENIED**.

Dated: March  27 , 2007                                                    s/Richard H. Kyle
                                                                                                    RICHARD H. KYLE
                                                                                                    United States District Judge

---

jurisdiction there. Second, Central Freight Lines held that the defendant's Texas activities were, "in some sense, continuous and systematic," 372 F.3d at 381, yet concluded that the defendant's actions, "*in toto*, are clearly not substantial enough to justify subjecting [it] to suit in . . . Texas based on a theory of general personal jurisdiction," id. The court provided no rationale for that conclusion, and it appears to conflict with Supreme Court and Eighth Circuit case law. See, e.g., Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006) ("General jurisdiction exists where the contacts between the defendant and the forum state are 'continuous and systematic.'").